UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESMOND RICKS, AKILAH
COBB, and DESIRE'A RICKS,

        Plaintiffs,

v.

DAVID PAUCH, DONALD
STAWIASZ, and ROBERT B.
WILSON,

        Defendants.
_____/

Case No. 17-12784

Paul D. Borman
United States District Judge

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION (ECF NO. 115)

### I.    INTRODUCTION

On April 2, 2020 the Court issued an Opinion and Order denying Defendants' Motion for Summary Judgment (ECF No. 91) and denying Plaintiff's Motion for Partial Summary Judgment (ECF No. 92). (ECF No. 114.) In the Opinion and Order, the Court, in part, denied Defendants David Pauch, Donald Stawiasz and Robert Wilson's motion for summary judgment on Plaintiffs' constitutional fabrication of evidence, malicious prosecution and *Brady*-derived claims, state law malicious prosecution claim, and intentional infliction of emotional distress claim. (*Id.*)

On April 16, 2020, Defendants filed a Motion for Reconsideration of the Court's denial of their motion for summary judgment. (ECF No. 115, Defendants' Motion for Reconsideration.) Defendants argue that the Court committed a palpable error by: (1) failing to consider medical examiner, Sawuit Kanluen's, and Plaintiff's expert, David Townshend's, criminal trial testimony, which would result in summary judgment for Defendant Stawiasz; (2) misstating the presence of Defendant Stawiasz at the Pauch and Wilson firearm examination; and (3) failing to consider that the various firearms examiners' identification conclusions represent only a "professional disagreement" or a "good faith difference of opinion," and thus Pauch and Wilson did not "intentionally" or "recklessly" falsify or fabricate the conclusion in their report. (*Id.*) Plaintiffs filed a Response on May 15, 2020, as ordered by the Court pursuant to E.D. Mich. L.R. 7.1(h)(2), arguing that Defendants' motion should be denied. (ECF Nos. 116, 118.) After reviewing these arguments, the Court finds that none of the arguments clears the high bar for granting reconsideration, and therefore denies the Defendants' Motion for Reconsideration.

## II.     STANDARD OF REVIEW

"A motion for reconsideration is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a

palpable defect in the opinion and that correcting the defect will result in a different disposition of the case." *Indah v. U.S. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). Eastern District of Michigan Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Michigan Dep't of Envtl. Quality v. City of Flint*, 296 F. Supp. 3d 842, 847 (E.D. Mich. 2017).

"A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted." *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001). "A motion for reconsideration should not be used liberally to get a second bite at the apple, but should be used sparingly to correct *actual* defects in the court's opinion." *Oswald v. BAE Industries, Inc.*, No. 10-cv-12660, 2010 WL 5464271, at *1 (E.D. Mich. Dec. 30, 2010). It should not be "used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not."

3

*Smith v. Mount Pleasant Pub. Sch.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003). It follows, then, that "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued," *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007), and parties "may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier." *Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014).

### III.   ANALYSIS

Defendants identify three alleged defects in the Court's Opinion: (1) whether the Court failed to consider Townshend and Kanluen's criminal trial testimony and consideration of the evidence would result in summary judgment for Defendant Stawiasz; (2) whether the Court misstated the presence of Defendant Stawiasz at the Pauch and Wilson firearm examination and correction of that misstatement would lead to summary judgment for Stawiasz; and, (3) whether the Court failed to consider that the various experts' firearms identification conclusions represent a difference of professional opinion attributable to working in a different era with different standards and methods and consideration of this evidence would result in summary judgment for Defendants Wilson and Pauch.  (ECF No. 115.)   Each of these

arguments is unpersuasive, and, even if any of these three conclusions are "palpable defects," correcting them would not "result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3).

Defendants first claim that the Court failed to consider the criminal trial testimony of the medical examiner, Sawuit Kanluen, and Plaintiff's expert, David Townshend, in its Opinion and Order. (ECF No. 115 at pp. 3-11, PgID 6096-6104.) However, the Court did in fact expressly consider and quote the exact trial testimony cited by Defendants in their motion for reconsideration. (See ECF No. 114, Opinion and Order, at pp. 12-14, PgID 6020-22.) The Court acknowledged Defendants' argument in their motion for summary judgment that:

> [T]here is no evidence that Stawiasz knowingly and intentionally gave the wrong bullets to Townshend for examination in 1992, and that Plaintiff's "have no evidence that the bullets were switched, who did it, where or how it was done." According to Defendants, Townshend, Kanluen and Pauch all examined the evidence bullets during the trial and agreed that those were the bullets they had previously examined, and Townshend never complained in 1992 that the bullets were "near pristine."

(ECF No. 114 at pp. 51-52, PgID 6059-60 (internal record citation and footnote omitted).) Then, considering Defendants' and Plaintiffs' arguments, the Court concluded that there was sufficient evidence to create a question of fact precluding summary judgment for Defendant Stawiasz:

5

> Defendants argue that there is no evidence that any person in the chain of evidence switched the bullets, much less evidence that Stawiasz did so, and that Plaintiffs instead rely on only speculation and conjecture that Stawiasz had the "means and opportunity" to do so. Plaintiffs argue in response that Townshend averred in his sworn affidavit that the bullets he examined in 1992 are not the same bullets he examined in 2018. It is undisputed that Stawiasz is the person who transported those bullets to Townshend in 1992, and thus he had "means and opportunity" to switch the bullets. Indeed, Stawiasz conceded in his deposition that he had both the means and the opportunity to switch the evidence bullets with the bullets test-fired from the Rossi handgun by Defendants Pauch. (Stawiasz Dep. at pp. 123, 125, 127.) Townshend testified that he remembers remarking to Stawiasz, during the examination of the bullets in 1992, that the bullets looked undamaged, but that Stawiasz assured Townshend that the bullets he was examining were in fact the evidence bullets. (Townshend Dep. at pp. 115, 127.) And, Defendants concede that Townshend might have examined the previously obtained "test" bullets instead of the actual evidence bullets in 1992. (Defs.' Mot. S.J. at 25.)
>
> Viewing all of this evidence in the light most favorable to Plaintiffs, although a jury might ultimately find that Stawiasz did not switch the evidence bullets with the test-fired bullets from the Rossi handgun when he brought them to Townshend for testing in 1992, it would not be unreasonable in finding that he had. And as explained above, there is more than a reasonable likelihood that this fabricated bullet evidence "could have affected the judgment." Thus, a fact question remains, and Defendants are not entitled to summary judgment on Plaintiffs' fabrication of evidence claim against Defendant Stawiasz.

(ECF No. 114 at pp. 53-54, PgID 6061-62.) Accordingly, the Court did consider the criminal trial testimony of Kanluen and Townshend in deciding Defendants' motion for summary judgment, examined the evidence in the light most favorable to

Plaintiffs, and correctly determined that Defendants are not entitled to summary judgment. The fact that Stawiasz was "court ordered" to bring the evidence bullets to Townshend for testing in 1992 (which the Court acknowledged in its Opinion and Order at pp. 10-11, PgID 6018-19) does not change the Court's analysis. Likewise, Defendants' recitation of Prosecutor Simon's statements regarding the criminal trial proceedings do not vitiate the question of fact created by Townshend's affidavit and deposition testimony, coupled with Stawiasz's means and opportunity to switch the bullets. The Court cannot resolve credibility issues at the summary judgment stage, and must view the evidence in the light most favorable to the non-moving Plaintiffs, not Defendants. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).

Defendants argue that the Court must ignore Townshend's July 8, 2015 affidavit and his July 19, 2019 deposition testimony, in which he testified that the bullets he examined in 1992 were not the evidence bullets he viewed in 2015 and examined in 2018. (ECF No. 115 at pp. 11-12, PgID 6104.) Defendants assert that Townshend is "bound by" his testimony at the criminal trial, and that he "must not be allowed to directly contradict his sworn testimony with a sham affidavit and supporting deposition testimony more than 23 years after the criminal trial in an

effort to manufacture a genuine issue of material fact and defeat summary judgment." (*Id.* citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) and *Aerel SRI v. PCC Airfoils LLC*, 448 F.3d 899, 908 (6th Cir. 2006).) Those decisions Defendants rely on hold that "[a] party cannot create a factual issue by filing an affidavit, after a motion for summary judgment had been made, which contradicts h[is] earlier deposition testimony." *Reid*, 790 F.2d at 460; *see also Aerel SRI*, 448 F.3d at 906 (same). That is not what happened here.

In April 2015, Townshend examined digital photographs of the evidence bullets that had been received by the Michigan Innocence Project, and he signed an affidavit on July 8, 2015 stating that the photographs showed "lead bullets that are severely mutilated and extensively damaged." (ECF No. 91-83, Townshend Aff. at p. 3, PgID 3327.) He further stated that those evidence bullets depicted in the photographs "are not the fired bullets [he] received and microscopically examined on August 15, 1992." (*Id.*) He continued that "[t]he fired bullets exhibited in the digital photographs are in such a mutilated and damaged condition it is doubtful that a positive identification with a suspect firearm would be possible." (*Id.*) Townshend opined that "[a] new examination of the evidence on this case is warranted." (*Id.*) Ricks filed a Successive Motion for Relief from Judgment on June 1, 2016, which

was subsequently granted, relying primarily on Townshend's July 8, 2015 affidavit. (ECF No. 91-85, ¶ 6, PgID 3330.) Townshend later testified in his deposition that he examined the actual evidence bullets for the first time on April 23, 2018. (ECF No. 91-74, Townshend Dep. at p. 204, PgID 3183.) Based on his examination, Townshend opined that the evidence bullets "exhibit class rifling characteristics of 5 lands and grooves with a right twist," and that the two evidence bullets "were probably fired from the same revolver," but that "without having the revolver to fire test shots, it is not possible to make a positive identification." (ECF No. 92-25, June 16, 2018 Townshend Report at p. 2, PgID 4036.) He then opined that "the 5-shot Rossi revolver with serial number D373334 has class rifling characteristics of 6 lands and grooves with a right twist and could not have fired the 2-38 Special caliber fired bullets identified as ET#923409 and ET#923410." (*Id.*)

Defendants' request that Townshend's affidavit testimony should be precluded under the "sham affidavit" rule set forth in *Reid* is rejected. Townshend did not recant his prior testimony, or offer this affidavit after a motion for summary judgment was made, but instead explains that the bullets he examined in 1992 were not the evidence bullets that he first viewed in 2015 and then examined in 2018. Townshend's 2015 affidavit was not proffered to "rehabilitate" prior deposition

9

testimony after a summary judgment motion was made, as in *Reid*, but instead was provided *before* Plaintiff was exonerated in 2017 and well *before* this civil litigation was even initiated on August 23, 2017, and in fact was key evidence leading to granting Plaintiff's Successive Motion for Relief from Judgment. This affidavit and deposition testimony, coupled with Stawiasz's concession in his deposition that he had both the means and the opportunity to switch the evidence bullets when he brought them to Townshend for testing in 1992, creates a fact issue precluding summary judgment for Stawiasz.

Accordingly, Defendants have failed to demonstrate a palpable defect in the Court's Opinion by which the Court and the parties have been misled and Defendants' motion for reconsideration on this basis is DENIED.

Second, Defendants assert that the Court's Opinion and Order misstates that "[o]n March 6, 1992, Pauch, *with Stawiasz present*, test fired bullets from the Rossi handgun and compared those test-fired bullets to the bullets removed from Bennett's body." (ECF No. 115 at p. 14, PgID 6107, citing ECF No. 114 at p. 8, PgID 6016 (emphasis added).) Defendants assert that there is no evidence that Stawiasz was present in the firearms lab during the examination of the evidence bullets. (*Id.*) While Defendants are correct that the statement in the Opinion that Stawiasz was

"present" when Pauch test fired bullets from the Rossi handgun on March 6, 1992 is incorrect, this misstatement is immaterial to the Court's decision, and particularly to whether Stawiasz had the means and opportunity to switch the bullets when he brought them to Townshend for testing on August 16, 1992. The Court did not again cite or rely on this mis-statement (in the "Factual Background" section of its Opinion) when analyzing whether summary judgment was appropriate as to Plaintiff's claims against Stawiasz. (See ECF No. 114 at pp. 53-54, PgID 6061-62.) Accordingly, Defendants have failed to show that this misstatement was a "palpable defect" or that it would have "result[ed] in a different disposition of the case," and Defendants' motion for reconsideration on this basis is DENIED. *See* E.D. Mich. L.R. 7.1(h)(3).

Third, and finally, Defendants complain that the Court's finding "that the conclusion reached in the Pauch and Wilson Firearms Identification report that the evidence bullets were fired from the Rossi handgun is wrong" is erroneous and "ignores the expert's differences of opinion and the evolution of some of the opinions through time." (ECF No. 115 at p. 16, PgID 6109.) Defendants' argument fails because it is simply an attempt to "re-hash an old argument" Defendants made in their motion for summary judgment and in their motion to strike experts. *See*

11

*Smith*, 298 F. Supp. 2d at 637. The Court discussed all of the experts' evaluations of the bullet evidence and the methods they employed in their analyses in its Opinion and Order. (See ECF No. 114 at pp. 9, 16-18, 21-24, PgID 6017, 6024-26, 6029-32.) All experts who examined the evidence bullets in 2017 and 2018 agreed that the bullets were classified as "5R" and thus could not have been fired from the Rossi handgun (classified as "6R"), as found by Defendants Pauch and Wilson in 1992. The Court explained that:

> [T]he Wayne County Circuit Court granted Ricks' Successive Motion for Relief from Judgment, which eventually resulted in the dismissal with prejudice of all charges against Ricks, because the Molnar Report "contradicts the conclusion reported by DPD" in the Pauch & Wilson Firearms Identification Report, and thus "undermines the reliability of the firearms evidence used to convict Defendant" and thus "Defendant must be given a new trial." (Stip'd Order Granting Def.'s Successive Mot. for Relief, Conclusion ¶¶ 1-4.)
>
> Dean Molnar of the Michigan State Police, defense expert Jay Jarvis and Plaintiffs' experts David Balash and David Townshend have all since examined the evidence bullets recovered from Bennett's body and determined that the bullets indisputably have <u>five</u> lands and grooves with a right twist and are thus classified as "class 5R." (Molnar May 2017 Corrected Report; Jarvis Official Report; Balash Dep. at pp. 100-01; Townshend 6/16/18 Report at p. 2.) The experts all testified that the evidence bullets could not have been fired by the Rossi handgun. (Molnar Dep. at p. 31; Jarvis Dep. at p. 45; Balash Dep. at pp. 100-01; Townshend 6/16/18 Report at p. 2.)
>
> There is therefore overwhelming evidence that the conclusion reached in the Pauch & Wilson Firearms Identification report that the evidence

12

> bullets were fired from the Rossi handgun is wrong. In fact, Pauch now admits that because the Rossi handgun is class 6R, the evidence bullets (since classified as class 5R) were not fired by the Rossi handgun. (Pauch Dep. at p. 102 (Q. So you would agree with me, that gun [the Rossi handgun] could not fire that [evidence] bullet? A. That's right, sir.").) Thus, it is undisputed that the conclusion in the Pauch & Wilson Firearms Identification Report, identifying the evidence bullets as being fired by the Rossi handgun, is inaccurate or false.

(ECF No. 115 at pp. 33-35, PgID 6041-43.)

The Court also found in its March 23, 2020 Opinion and Order Denying Defendants' Motion to Strike Experts that the methodologies utilized by the experts were reliable. (ECF No. 113.) To the extent Defendants are seeking reconsideration of that Opinion, their request is untimely. In any event, the Court again in that Opinion thoroughly discussed the methodologies used by each expert, explaining that:

> [T]he expert opinions at issue here do not attempt to opine (as Defendants Pauch and Wilson did in 1992) as to whether the evidence bullets in this case positively "match" a specific gun, like the Rossi handgun. Indeed, they cannot as the Rossi handgun was destroyed by the Michigan State Police after Ricks' appeal and initial motion for relief from judgment were denied and thus was not available to these experts for a comparison or test-firing in 2017 and 2018.
>
> Rather, these experts principally opine, based on their examination of the evidence bullets, that the evidence bullets are classified as Class 5R, and that those bullets thus could not have been fired by a handgun classified as a Class 6R gun. The Rossi handgun at issue was classified

13

as a Class 6R revolver by Pauch and Wilson, and thus the Rossi handgun did not fire the evidence bullets.

(ECF No. 113 at pp. 18-19, PgID 5976-77.) Therefore, there is no palpable defect in the Court's Opinion and Defendant's third claim of palpable error is DENIED.

## IV. CONCLUSION

Defendants have failed to identify any palpable defect in the Court's April 2, 2020 Opinion and Order and instead have "merely present[ed] the same issues ruled upon by the court" and have failed to "show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). Therefore, for the reasons set forth above, the Court DENIES Defendants' Motion for Reconsideration. (ECF No. 115.)

**IT IS SO ORDERED.**

Dated: July 17, 2020

s/Paul D. Borman
Paul D. Borman
United States District Judge

14